UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI)

CASE NO. 09-33331-AJC

IN RE:

**Onyx on the Bay Condominium Association, Inc.**

Debtor.

_____/

# EMERGENCY MOTION OF CREDITOR, AFCO CREDIT CORPORATION, FOR RELIEF FROM THE AUTOMATIC STAY AND FOR ADEQUATE PROTECTION AND REQUEST FOR EXPEDITED HEARING

The Creditor, AFCO CREDIT CORPORATION, (hereinafter referred to as "AFCO"), by and through its undersigned counsel, and in compliance with Local Bankruptcy Rules 9001 et seq., hereby files this Emergency Motion for Relief from the Automatic Stay and for Adequate Protection and respectfully requests an Expedited Hearing, and in support thereof, states as follows:

1. **STATEMENT OF FACTS UPON WHICH THE REQUEST FOR RELIEF IS BASED (and CERTIFICATE OF NECESSITY for EMERGENCY HEARING):**

**BACKGROUND.** The subject collateral, unearned insurance premiums diminish in value at a specific rate each day. AFCO is an insurance premium financing company whose business consists of lending money to companies to finance their business insurance premiums. The collateral for the loan is the unearned insurance premiums of the policy that was financed. Upon cancellation of that policy, AFCO is to receive the unearned premiums, if any, in full or partial repayment of the loan. The Creditor, AFCO, needs and respectfully requests an expedited hearing because the subject collateral, unearned insurance premiums diminish in value at a specific rate each day.

**UNPAID BALANCE.** The unpaid balance due under the subject Premium Finance Agreement was

$144,373.21. As of October 5, 2009, the value of the collateral, that is, the unearned premium, under the Premium Finance Agreement was $118,644.00 as of November 3, 2009. The collateral on the Premium Finance Agreement diminishes each and every day at a rate of $561.71. Accordingly, affirmative harm is occurring daily. The collateral is now less than the amount owed and the collateral will continue to diminish at the rate of $561.71 per day.

2.   **STATEMENT OF CAUSE UNDER 11 U.S.C. § 362(d)(1):** The Creditor has a lack of adequate protection of its interest in property, i.e., in the unearned premiums. The amount owed, referenced above, is more than the collateral as of the date of this Motion.

3.   **STATEMENT OF THE AMOUNT OF THE DEBT**: $144,373.21 as of October 5, 2009.

4.   **ESTIMATED VALUE OF THE COLLATERAL**: **The Petition was filed on October 11, 2009. As of November 3, 2009, the value of the collateral was $118,644.00. That collateral diminishes each and every day at a rate of $561.71.**

5.   The Exhibits that are attached hereto in support of this Motion are:

   Exhibit "A"   :   Invoice Collection Record

6.   **IRREPARABLE HARM:**   Irreparable harm will occur if this Motion is not granted or if expedited consideration is not given to this Motion. The collateral diminishes on a daily basis. The collateral is the unearned insurance premiums. Every day that AFCO is not allowed to cancel the policies and receive unearned premiums, the policies are in effect and the unearned premiums diminish. This is irreparable. Unearned premiums diminish pursuant to the subject insurance policies. AFCO cannot reverse or turn back the cancellation date of the policies; AFCO provides the financing for the insurance premiums, it does not provide the insurance and does not act as an insurer. AFCO can exercise no control over the policies, except to cancel them

2

pursuant to the power of attorney given to it by the insured in the Premium Finance Agreement.

7.   **LIKELIHOOD OF SUCCESS ON THE MERITS :**  AFCO has a lack of adequate protection of its collateral and of its interest. Even as of the date of this Motion, the value of the collateral is less than the amount owed, not including costs or attorney's fees that are owed under the Premium Finance Agreement.

8.   AFCO is an insurance premium financing company whose business consists of lending money to companies to finance their business insurance premiums.

9.   **RELIEF FROM THE STAY AND ADEQUATE PROTECTION:** The Finance Agreements provide that in the event of the Debtor's default, AFCO is entitled, inter alia, to cancel the policies which were financed and collect any unearned premiums or other amounts payable under the policies.

10.  Under the Finance Agreement, the Debtor "assigns to AFCO security for the total amount payable in this Agreement, any and all unearned premiums and dividends which may become payable under the insurance policies and loss payments which reduce the unearned premiums, subject to any Mortgagee or loss payee interest. The [Debtor] gives to AFCO a security interest in all items mentioned in this paragraph." (Exhibit A, page 3, paragraph 4).

11.  The Debtor is in Default under the Agreement. Evidence of the Default is the amount owed and the amounts of the collateral are provided by the Invoice Collection Record that is attached as Exhibit "B".

12.  §362 (d) (1) of the Code provides that on a request of a party in interest and after notice and the hearing, the Court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest...." §361 of the Code provides that adequate protection may be provided by "requiring the Trustee to make a cash

payment or periodic cash payments" to the Holder of an interest in property to the extent that the stay under §362 or the use of property under §363 of the Code results in a decrease in the value of such entities interest in such property.

13. Unless payments are made to protect its security interest, AFCO lacks adequate protection of its interest and cause to modify the automatic stay and to permit AFCO to exercise its rights under the Finance Agreement.

## MEMORANDUM OF LAW

### A. PERFECTION OF THE SECURITY INTEREST.

AFCO is an insurance premium financing company whose business consists of lending money to companies to finance their business insurance premiums. The collateral for the loan is the unearned insurance premiums of the policy that was financed. Upon cancellation of that policy, AFCO is to receive the unearned premiums, if any, in full or partial repayment of the loan. The Fifth Circuit Court of Appeals has described insurance premium financing as follows:

> Premium Financing involves an advance by the finance company to the insurance company or its agent of the premium due for the full term of the policy. This advance has been repaid by the insured to the finance company and amortized monthly installments which includes an additional amount to cover financing charges. The financing company is secured in making this advance by obtaining the right to cancel the policy and to receive the return premium due upon cancellation if timely repayments are not made. Baker & Co. vs. Preferred Risk Mutual Insurance Company, 569 F.2nd 1347, 1348 (5th Cir. 1978) as cited in In re: Redfeather Fast Freight, Inc., 1 Bankr. 446; 22 Collier Bankr. Cases (MB) 150 (D. Neb. 1979).

Premium Financing has been held valid and enforced by Courts which have considered the various issues under it. The Florida Insurance Code, for example, provides for regulation on insurance financing under Florida Statutes §627.848. See, Prida v. Transamerica Insurance Finance Corp., 651 So.2d 763 (Fla. 3d DCA 1995) and Florida East Coast Properties, Inc. vs. Tifco, Inc.,

556 So. 2d 750 (Fla. 3d DCA 1989).

The Premium Finance Company, in this case AFCO, has a security interest in the unearned premiums of the insurance policy. The Premium Finance Company is <u>not</u> required to file anything to perfect that interest. <u>See</u>, e.g., <u>In re: RBS Industries, Inc.</u>, 67 B.R. 946 (D. Conn. 1986), <u>In re: U.S. Repeating Arms Company,</u> 67 B.R. 990 (Dist. Conn. 1986); <u>Premium Finance Specialists vs. Lindsey,</u> 11 BR 135 (E.D. Ark. 1981); and <u>In re: Remcor, Inc.,</u> 186 BR 629 (W. D.. Pennsylvania. 1995).

It is clear from every Court which has examined this issue, that Article 9 of the U.C.C. (secured transactions) does <u>not</u> apply to perfection of the interest of a premium finance corporation in the unearned premiums. See, e.g., <u>In re: Remcor, Inc.,</u> 186 BR 629 (W.D. Pennsylvania 1995). In <u>In re: Remcor,</u> the Bankruptcy Court held that the security interest in the unearned premiums was perfected even though the premium finance agreement may have violated Pennsylvania's insurance premium finance statutes.

The lien held by the insurance premium finance company is superior to all other liens. This is so because the collateral, that is the unearned premiums, is <u>not</u> property of the Estate. <u>In re: Remcor, Inc.,</u> 186 BR 629 (W.D. Pennsylvania 1995). In <u>In re: Remcor,</u> the Western District of Pennsylvania held that the premium finance company held a perfected security interest in the unpaid insurance premiums which was above and superior to another creditors "perfected super priority post petition lien of all of debtors assets". One of the reasons for that is that the unearned insurance premiums were not property of the Estate. The rights to the unearned premiums were granted and conveyed to the insurance premium finance corporation <u>before</u> petition for bankruptcy. In <u>In re: Remcor,</u> the Court said: "The reason why [the other creditors] post petition super priority lien did not attach to the unearned insurance premiums, is that they were not "property of the Estate". " <u>In</u>

re: Remcor, Inc. 186 BR at 636.

This lien is created by the Irrevocable Power of Attorney given by the insured at the time that the insured executes the Premium Finance Agreement. In this case, the subject Premium Finance Agreement provides for a security interest as follows:

> 3. SECURITY INTEREST: The insured assigns to AFCO as security for the total amount payable in this Agreement. Any and all unearned premiums and dividends which may become payable under the insurance policies and loss payments which reduce the unearned premiums, subject to any mortgagee or loss payee interest. The insured gives to AFCO a security interest in all items mentioned in this paragraph.

The Agreement, in paragraph 10, also provides for a Power of Attorney as follows:

> 10. POWER OF ATTORNEY: The insured appoints AFCO its attorney in fact with full authority to cancel the insurance policies financed herein for non payment of premium.

The Power of Attorney in the Premium Finance Agreement is enforceable in Bankruptcy. In re: Universal Motor Express, Inc. 72 BR 208 (W.D. N.C. 1987); U.S. Repeating Arms Co., 67 BR 990 (Dist. Conn. 1986) and In re: Maplewood Poultry Co., 2 Bankr. 550, 28 UCC Rep. Serv. (Callaghan) 186 (Dist. Maine 1980). In all of the above cited cases, an Irrevocable Power of Attorney given by a debtor to insurance premium finance companies are authorizing the company to cancel the policy and apply unearned insurance premiums against any default are enforceable against the debtor after the debtor files for Chapter 11 relief, where the Power of Attorney was coupled with an interest in unearned premiums. In all of those cases, and in this case, the Power of Attorney is coupled with the interest in the unearned premiums, the collateral for the loan.

### B. AFCO IS ENTITLED TO STAY RELIEF.

AFCO in this case is entitled to Stay Relief. The Premium Finance Company is entitled to relief from stay absent any concrete evidence from the debtor that AFCO will have adequate protection of its debt. For example, it is not sufficient that the debtor allege that the insurance

policies underlying the Premium Finance Agreement are necessary for effective reorganization of the debtor. It is also not sufficient that the debtor present evidence that it has attempted to have the insurers agent rework the applicable insurance coverage to reflect reduced requirement and to establish an effective post petition premium so that the debtor can begin making weekly payments thereon. The <u>debtor</u> has the burden to prove adequate protection and is required to do so with concrete evidence. In re: Universal Motor Express, Inc., 72 BR 208 (W.D. N.C. 1987).

If the Court were inclined to grant adequate protection as opposed to stay relief, adequate protection can be more than the accrued amounts by which collateral has diminished in value. In re: U.S. Repeating Arms, 67 Bankr. BR 990 (Dist. Conn. 1986) the Court said:

> However, this method does not foreclose other means by which a debtor may provide adequate protection, See 11 USC § 361 (2) and (3); and it is the duty of [the debtor] not this Court, to propose sufficient protection to satisfy Code §361. See, In re: Auto Train Corporation 9 BR 166.

In re: U.S. Repeating Arms Company 67 BR 1000. If the Court were to order a debtor to make payment of the diminishment of value of the collateral, the date from which the diminishment should be measured is the filing of the initial petition for bankruptcy protection. In In re: Auto Train Corporation, 9 BR 159 (Dist. of Colombia 1981) the Court said:

> While the concept of value is certainly a fluid one in bankruptcy and will be applied by the Court according to the unique circumstances of the case, the value is ultimately linked to the creditor's interest in and right to certain collateral. It, likewise, is not to be limited or restricted to a given point in time vis-à-vis the case or proceeding. N 19. However, **11 USC § 361 is clearly designed to protect the secured creditor by assuring him that he will receive in value "essentially what he bargained for"**. (Citing: H.R.Rap No. 595, 95th Cong., 2 d Sess. 339 (1978)). Accordingly, if the creditor has a valid security interest, enforceable against the Trustee, that security interest exists throughout the case and is not "pegged" to a particular juncture in the proceeding-although the value of the collateral itself may vary depending upon the juncture of the proceeding. The proper application of adequate protection has been appropriately

7

> summarized in these words: "the most import message of the code with respect to the treatment of entities with an interest in property of the Estate is that the remedies may be suspended, even abrogated. Their right of recourse to the collateral may be terminated as it is consumed in the business, **but the value of their secured position as it existed at the commencement of the case is to be protected throughout the case when adequate protection is required….**" [emphasis added] citation to Collier on Bankruptcy, § 361.01 at 361-6 (15th Ed. 1980).
> (Emphasis added)

There is a long line of cases holding that for purposes of adequate protection, secured creditors are entitled to have the value of their interest calculated from the date the petition for relief is filed rather than the date on which the motion for adequate protection or relief from stay is filed. See, *In re Ritz-Carlton of D.C., Inc.*, 98 BR 170 (S.D. N.Y. 1989); *In re Craddock-Terry Shoe Corporation*, 98 BR 250 (W.D. Va. 1988); *In re U.S. Repeating Arms Co.*, 67 BR 990 (Dist. Conn. 1986); *In re Dahlquist*, 34 BR 476 (Dist. S. D. 1983). Likewise, the United States Supreme Court held in *United Savings Assoc. of Texas V. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), that a secured creditor has the right to receive protection for any decline in the value of the collateral during the automatic stay. AFCO should be protected from the decrease in value of its security interest resulting from the stay in its entirety; that is, from the commencement of the case.

## C. CONCLUSION.

AFCO's collateral diminishes at a fixed rate every day. AFCO holds a perfected security interest in that collateral and should be afforded stay relief to be allowed to obtain the unearned premiums from the insurer.

## CERTIFICATE OF COUNSEL

CASE NO. 09-33331-AJC

Pursuant to the Local Rule of the Southern District of Florida, the undersigned hereby certifies that he has attempted to confer with Defense counsel but has been unable to reach him.

9

CASE NO. 09-28837-JKO

## CERTIFICATE OF SERVICE

**I CERTIFY** that a true and correct copy of the foregoing was sent via U.S. Mail and fax on November 20, 2009 to **Jeffrey W. Blacher, Esq.**, 2999 NE 191 St # 805 Aventura, FL 33180, Fax: 305.705.0008, E: jblacher@blacherlaw.com

                                        **HICKEY LAW FIRM, P.A.**
                                        Attorneys for AFCO
                                        1401 Brickell Avenue
                                        Suite 510
                                        Miami, Florida 33131
                                        Tel.: 305.371.8000
                                        Fax: 305.371.3542

                               By: _____
                                        JOHN H. HICKEY, ESQ.
                                        Florida Bar No. 305081

9

# EXHIBIT A

**AFCO**  4501 College Boulevard, Suite 320, Leawood, KS 66211
Tel: 800-288-6901
Fax: 913-491-3912

**INSURED:** Onyx on the Bay Condominium Assoc.
**ACCT. NO.:** 72-10-106791-6

## INVOICE COLLECTION RECORD

| DATE | TYPE OF PAYMENT | CHARGE | CREDIT | BALANCE |
| --- | --- | --- | --- | --- |
| 07/06/2009 | Total Premium | 233,470.20 | | 233,470.20 |
| 07/06/2009 | Finance Charge | 6,358.50 | | 239,828.70 |
| 07/06/2009 | Down Payment + Payment - June | | 55,538.71 | 184,289.99 |
| 07/22/2009 | Payment - July | | 20,462.23 | 163,827.76 |
| 08/31/2009 | Payment - August | | 20,478.47 | 143,349.29 |
| 10/05/2009 | Assessa Late Charge | 1,023.92 | | 144,373.21 |