UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:  CASE NO. 09-33331-BKC-AJC
  Chapter 11

ONYX ON THE BAY
CONDOMINIUM ASSOCIATION, INC.,

    Debtor.
_____/

**DEBTOR'S MOTION TO DECLARE HYPERION
ONYX PARTNERS, LLC A SUBSTITUTE DEVELOPER AND TO
REQUIRE HYPERION TO FUND THE DEBTOR'S OPERATIONAL SHORTFALLS**

    Debtor, Onyx On The Bay Condominium Association, Inc. ("Onyx"), by and through undersigned counsel, hereby moves this Court to declare Hyperion Onyx Partners, LLC ("Hyperion") a substitute developer and to require Hyperion to fund the Debtor's operational shortfalls, and in support thereof states as follows:

**BACKGROUND**

    1.    The Debtor is a condominium association that is still within the purview of the developer, and is currently operating as Debtor in Possession.

    2.    The Debtor's original developer was Biscayne Bay Lofts, LLC, ("BBL"), a Florida Limited Liability Company.

    3.    Pursuant to Section 718.116 (9)(A)(2), Florida Statutes, BBL guaranteed to all purchasers of units that assessments would be capped and BBL, as developer, would meet the operational shortfalls of the Debtor association.

    4.    The developer has become insolvent due to the downturn in the real estate market as is no longer able to fund the operational shortfalls of the Debtor.

    5.    The Debtor has been working diligently to collect unpaid assessments and association fees, and has begun to foreclose assessment liens where indicated.

6. Additionally, the Debtor sought and received leave from the Court to utilize its reserve account to fund the buildings insurance financing and to meet other limited budgetary items.

7. At this time, the Debtor is unable to meet its operational budget on an ongoing basis.

## Hyperion is the Developer

8. The Onyx condominium project was originally funded through a loan from Corus Bank, N.A. ("Corus") to BBL. The funds were to be used for the payment of the Project Costs, including all Hard and Soft costs associated with the development of a condominium.

9. On April 29, 2009, Corus Bank, N.A. filed a complaint in the Circuit Court in and For Miami-Dade County, Florida against BBL and the Debtor alleging that BBL defaulted on the construction loan, and seeking a foreclosure on it's the mortgage of the subject condominium project (the "Foreclosure Action").

10. On September 9, 2009, Hyperion Onyx Partners, LLC was formed and organized for the purpose of acquiring the remaining unsold units at the Onyx condominium and offering them for sale to the public.

11. On September 11, 2009, the Office of the Comptroller of the Currency closed Corus and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver.

12. Subsequently, Hyperion purchased Corus' rights to the Onyx condominium loan and mortgage and substituted in as plaintiff to the Foreclosure Action, seeking title to unsold units at the Onyx.

13. On December 10, 2009, BBL, unable to continue funding the Debtor's operational shortfalls, quitclaimed thirty three (33) units located at the Onyx to Hyperion (the "Hyperion Units"). A copy of the Deed is attached hereto as Exhibit A.

14. Hyperion is currently promoting the sale of the Hyperion Units for sale or lease under contract documents and prospectuses, or offer circulars different from those previously filed by BBL, the original developer. Based upon the foregoing, Hyperion is considered a developer as defined by Section 718.103(16), Florida Statutes.[1] See also *Bishop Assocs. P'ship v. Belkin*, 521 So.2d 158 (Fla. 1st DCA 1988); *Chotka v. Fidelco Growth Investors*, 383 So.2d 1169 (Fla. 2d DCA 1980) (the lender does become more than just a lender by taking title to the project, completing construction, holding themselves out to be the developer and owner of the project, and advertising the units for sale to purchasers).

## Hyperion is Responsible for Shortfalls

15. As the successor developer, Hyperion is liable to make up any shortfall in the Debtor's operational budget.

16. Section 718.116 (9)(A)(2), Florida Statutes provides:

A developer who owns condominium units, and who is offering the units for sale, may be excused from payment of assessments against those unsold units for the period of time the developer has guaranteed to all purchasers or other unit owners in the same condominium that assessments will not exceed a stated dollar amount and that the developer will pay any common expenses that exceed the guaranteed amount. Such guarantee may be stated in the purchase contract, declaration, prospectus, or written agreement between the developer and a majority of the unit owners other than the developer and may provide that, after the initial guarantee period, the developer may extend the guarantee for one or more stated periods…

17. The premise of the developer guarantee provision is that a developer should be excused from paying assessments on its units during the initial sales phase when its units are

---

[1] Pursuant to F.S. 718.103(16), "Developer" means a person who creates a condominium or offers condominium parcels for sale or lease in the ordinary course of business . . .

**JEFFREY W. BLACHER, P.A.**
2999 N.E. 191ST ST. · SUITE 805 · AVENTURA, FLORIDA 33180 · TEL. 305-705-0888 · FAX. 305-356-3693

typically unsold and, thus, not consuming services of the association. Joseph E. Adams, *Community Associations: 1998 Survey of Florida Law*, 23 Nova L. Rev. 65, 75 (1998). Otherwise, the developer would bear a disproportionate burden in the maintenance of the condominium. Id.  However, in exchange for this excusal from paying assessments, the developer agrees to "cap" the non-developer unit owner's assessments, and must further undertake to fund any deficit incurred in the operation of the condominium. (including funding of reserves, unless properly waived) during the guarantee period. *Id.* citing Fla. Admin. Code Ann. r. 61B-22.004 (1998).[2]

      WHEREOFRE, the Debtor respectfully requests that the Court enter an order declaring Hyperion a substitute developer and mandating Hyperion to meet the operations shortfalls of the Debtor's operating budget.

      I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

JEFFREY W. BLACHER, P.A.

      /s/
Jeffrey W. Blacher, Esq.
Fla. Bar No. 8168
2999 N.E. 191st St.
Suite 805
Aventura, FL 33180
Tel 305-705-0888
Fax 305-356-3693
jblacher@blacherlaw.com

---

[2] A copy of Fla. Admin. Code Ann. r. 61B-22.004 (1998) is attached as Exhibit "B".

CFN 2009R0900283
OR Bk 27119 Pgs 1027 - 1028; (2pgs)
RECORDED 12/17/2009 11:34:32
DEED DOC TAX 0.60
SURTAX 0.45
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Prepared by and Return to:

Richard J. Burton, Esq.
Attorney at Law
The Burton Firm
2999 N.E. 191st Street
Suite 805
Miami, FL 33180

_____(Space Above This Line For Recording Data)_____

# Quit Claim Deed

**THIS QUIT-CLAIM DEED**, Executed this 10th day of, **December 2009, AD**, between **Biscayne Bay Lofts, LLC, a Florida limited liability company**, whose post office address is **2601 S. Bayshore Drive., Suite 1000, Miami, FL 33133**, grantor, and **Hyperion Onyx Partners, LLC**, whose post office address is c/o Akerman Senterfit, 1 SE 3rd Avenue, 25th Floor, Miami, FL 33131, grantee.

(Wherever used herein the terms "grantor" and "grantee" shall include all the parties to this instrument singular and plural, heirs, legal representatives, and assigns of individuals, and the successor and assigns of corporations, trusts and trustees, wherever the context so admits or requires.)

WITNESSETH, that the said grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00), and other good and valuable consideration to said grantor in hand paid by the said grantee, the receipt whereof is hereby acknowledged, does hereby remise, release, and quit-claim unto the said grantee, forever, all the right, title, interest, claim, and demand which the said grantor has in and to the following described lot, piece or parcel of land, situate, lying and being in the County of Dade, State of Florida, to-wit:

The following thirty three (33) units: 205, 306, 406, 505, 506, 603, 604, 606, 805, 901, 1001, 1101, 1201, 1205, 1401, 1405, 1505, 1701, 1705, 1801, 1805, 1905, 2001, 2005, 2101, 2105, 2205, 2401, 2501, 2601, 2605, 2704, and 2801, of ONYX ON THE BAY, A CONDOMINIUM, according to the Declaration thereof, as recorded in Official Records Book 25476, Pages 1850-1963 (114 pgs), of the Public Records of Miami Dade County, Florida, together with and undivided share in the common elements appurtenant thereto.

**TO HAVE AND TO HOLD**, the same together with all and singular the appurtenances thereunto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity and claim whatsoever of the said grantee, either in law or equity, to the only proper use, benefit and profit of the said grantee forever.

**IN WITNESS WHEREOF**, the said grantor has signed and sealed these presents the day and year first above written.

Exhibit A

Signed, sealed and delivered in the presence of:

_____
Witness Signature
(As to the first Grantor)

PRIMI CONDE
_____
Printed Name

_____
Witness Signature
(As to first Grantor)

M. CRISTINA MARTINEZ
_____
Printed Name

_____
Grantor Signature

Willy A Bermello
_____
Printed Name

2601 S Bayshore Dr, Miami, FL 33133
Post Office Address

**STATE OF FLORIDA**

**COUNTY OF DADE**

**I HEREBY CERTIFY**, that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared to me **Willy A. Bermello, Managing Member of Biscayne Bay Loft, LLC, a Florida limited liability company**, known to be the person(s) described in and who executed the foregoing Quit-Claim Deed and that he acknowledged before me that he executed the same of his own will and deed. I relied upon the following form(s) of identification of the above named person(s); Florida Driver's License. An oath was not taken.

**WITNESS** my hand and official seal in the County and State last aforesaid this 10th day of **December 2009, A.D.**

_____
Notary Signature

MICHELLE KOLODNY
_____
Printed Notary Signature

MICHELLE C. KOLODNY
MY COMMISSION # DD 507482
EXPIRES: April 14, 2010
Bonded Thru Notary Public Underwriters

Comm. #/Expiration Date: 4.14.10

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that this is a true copy of the original filed in this office on _____ day of _____ A D 20___
WITNESS my hand and Official Seal.
HARVEY RUVIN, CLERK of Circuit and County Courts
By _____ D.C.

**61B-22.004 Guarantees of Common Expenses Under Section 718.116(9)(a)2., Florida Statutes.**

(1) Establishment of the guarantee. If a guarantee is not included in the purchase contracts, declaration, or prospectus, any agreement establishing a guarantee shall be effective only upon the approval of a majority of the voting interests of the unit owners other than the developer. Approval shall be expressed at a meeting of the unit owners, voting in person or by limited proxy; or by agreement in writing without a meeting if provided in the bylaws. Such guarantee shall meet the requirements of this rule.

(2) Guarantee period. The period of time for the guarantee shall be indicated by a specific beginning and ending date or event.

(a) The ending date or event shall be the same for all of the unit owners of a condominium, including unit owners in different phases of phase condominiums, but may vary for each condominium operated by a multicondominium association.

(b) The guarantee may provide for different intervals of time during a guarantee period with different dollar amounts for each such interval.

(c) The guarantee may provide that after the initial stated period, the developer has an option to extend the guarantee for one or more additional stated periods. The extension of a guarantee is limited to extending the ending date or event; therefore, the developer does not have the option of changing the level of assessments guaranteed.

(3) Maximum level of assessments. The stated dollar amount of the guarantee shall be an exact dollar amount for each type of unit identified in the declaration. Regardless of the stated dollar amount of the guarantee, assessments charged to a unit owner shall not exceed the maximum obligation of the unit owner based on the total amount of the adopted budget and the unit owner's proportionate ownership share of the common elements.

(4) Cash funding requirements during the guarantee. The cash payments required from the guarantor during the guarantee period shall be determined as follows:

(a) If at any time during the guarantee period the funds collected from unit owner assessments at the guaranteed level and other revenues collected by the association are not sufficient to provide payment, on a timely basis, of all common expenses, including the full funding of the reserves unless properly waived, the guarantor shall advance sufficient cash to the association at the time such payments are due; and

(b) Expenses incurred in the production of non-assessment revenues, not in excess of the non-assessment revenues, shall not be included in the common expenses referenced in subsection (5) of this rule. If the expenses attributable to non-assessment revenues exceed non-assessment revenues only the excess expenses must be funded by the guarantor. For example, if the association operates a rental program in which rental expenses exceed rental revenues the guarantor shall fund the rental expenses in excess of the rental revenues. Interest earned on the investment of association funds may be used to pay the income tax expense incurred as a result of the investment, such expense shall not be charged to the guarantor, and the net investment income shall be retained by the association. Each such non-assessment revenue generating activity shall be considered separately. Capital contributions collected from unit owners are not revenues, and shall not be used to pay common expenses.

(5) Calculation of guarantor's final obligation. The guarantor's total financial obligation to the association at the end of the guarantee period shall be determined on the accrual basis using the following formula:

(a) The guarantor shall fund the total common expenses incurred during the guarantee period, including the full funding of the reserves unless properly waived; less

(b) The total regular periodic assessments earned by the association from the unit owners other than the guarantor during the guarantee period regardless of whether the actual level charged was less than the maximum guaranteed amount.

(c) If a guarantee pursuant to Section 718.116(9), Florida Statutes, existed within a multicondominium association created prior to July 1, 2000, the guarantor's financial obligation to the association shall be calculated as provided in paragraphs (a) and (b) for each condominium in which the guarantee existed. If a guarantee pursuant to Section 718.116(9), Florida Statutes, existed within a multicondominium association created after June 30, 2000, or within a multicondominium association created prior to July 1, 2000, that has created separate ownership interests of the common surplus of the association for each unit as provided in Sections 718.104(4)(h) and 718.110(12), Florida Statutes, the guarantor's financial obligation to the association shall include the amount calculated pursuant to Section 718.116(9)(c), Florida Statutes.

(d) Expenses incurred in the production of non-assessment revenues, not in excess of the non-assessment revenues, shall not be included in the common expenses referenced in subsection (5) of this rule. If the expenses attributable to non-assessment revenues exceed non-assessment revenues only the excess expenses shall be funded by the guarantor. For example, if the association operates a rental program in which rental expenses exceed rental revenues the guarantor shall fund the rental expenses in excess of the rental revenues. Interest earned on the investment of association funds may be used to pay the income tax expense incurred as a result of

Exhibit B

the investment, such expense shall not be charged to the guarantor, and the net investment income shall be retained by the association. Each such non-assessment revenue generating activity shall be considered separately.

*Specific Authority 718.501(1)(f) FS. Law Implemented 718.111(2), (4), (7), (9), 718.112(2)(b)2., 718.116(9), 718.501 FS. History–New 7-11-93, Formerly 7D-22.004, Amended 12-18-01, 6-24-04.*