UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                                                          CASE NO. 09-33331-BKC-AJC
                                                                                                 Chapter 11
ONYX ON THE BAY
CONDOMINIUM ASSOCIATION, INC.,

     Debtor.
_____/

## DEBTOR'S EMERGENCY MOTION TO APPROVE
## POST-PETITION INSURANCE PREMIUM FINANCE AGREEMENT

     Debtor, Onyx On The Bay Condominium Association, Inc., by and through undersigned counsel, and pursuant to Sections 7183112, 718.115 and 718.116, Florida Statutes, moves this Court for an Order granting the Debtor in Possession authority to utilize its reserve cash accounts for the payment of critical common expenses, and as grounds therefore states as follows:

     1.     The Debtor is a condominium association that is still within the purview of the developer, and is currently operating as Debtor in Possession.

     2.     The developer had elected to fund operational shortfalls, but became insolvent due to the downturn in the real estate market. The Developer is currently an involuntary Chapter 7 Debtor before this Court, Case Number 10-13020-BKC-AJC.

     3.     Additionally, the Debtor's available revenue for funding common expenses has diminished due to the rash of foreclosures and general non-payment of assessments and maintenance fees.

     4.     The Debtor has been working diligently to collect unpaid assessments and association fees, and has begun to foreclose assessment liens where indicated. The Debtor intends to employ the law firm of Siegfried, Rivera, Lerner, De La Torre & Sobel, P.A. as special counsel to the Debtor to pursue these claims.

CASE NO. 09-33331-BKC-AJC

5. The Debtor must maintain insurance as set forth on the Premium Finance Agreement. A copy of the Premium Finance Agreement is attached hereto as Exhibit A.

6. The policy will bear total premiums of $302,168.60, which the Debtor cannot pay at this time.

7. The policy is extremely valuable to the Debtor, and it is essential to maintain them in the interest of the preservation of the property, assets and business of the Debtor. The policy cannot presently be obtained for the Debtor unless the premiums are financed.

8. The Debtor has been unable to locate any source of unsecured premium financing.

9. The premiums for the policy are to be financed through AFCO CREDIT ACCEPTANCE CORP. ("AFCO"), which requires the Debtor to enter into a Premium Finance Agreement that includes a Security Agreement that grants AFCO a secured interest in the gross unearned premiums which would be payable in the event of cancellation of the insurance policy, and which further authorizes AFCO to cancel the financed insurance policy and obtain the return of any unearned premiums in the event of a default in the payment of any installment due.

10. In view of the importance of maintaining insurance coverage with respect to business activities and the preserving of the Debtor's cash flow and estate by financing the insurance premiums, the Debtor believes that it would be in the best interests of the Debtor's estate and creditors to induce AFCO to enter into such Premium Finance Agreement.

WHEREFORE, the Debtor respectfully requests an Order pursuant to Section 364(c)(2) of the Bankruptcy Code authorizing the Debtor to enter into the Premium Finance Agreement, including all rights and privileges granted AFCO therein, and authorizing AFCO to exercise all or its rights without first securing an Order of the Court, and for such other and further Order as to this Court seems just and proper.

CASE NO. 09-33331-BKC-AJC

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

JEFFREY W. BLACHER, P.A.

_____/s/_____
Jeffrey W. Blacher, Esq.
Fla. Bar No. 8168
2999 N.E. 191st St.
Suite 805
Aventura, FL 33180
Tel 305-705-0888
Fax 305-356-3693
jblacher@blacherlaw.com

# AFCO

**Premium Finance Agreement**
9155 S. Dadeland Boulevard, Suite 1402, Miami, FL 33156
TEL. NOS. 305-670-8703   800-288-5054

(CHECK APPROPRIATE BOX)
☐ PERSONAL
☒ COMMERCIAL

| | | AGENT (NAME & PLACE OF BUSINESS) | PRODUCER CODE NO. 10361417 | INSURED (NAME & RESIDENCE OR BUSINESS ADDRESS) |
|---|---|---|---|---|
| **A** | TOTAL PREMIUMS $ 302,168.60 | Aon Risk Services Inc<br>13901 Sutton Place Drive South<br>Building C Suite 360<br>Jacksonville, FL<br>ZIP CODE 32224   Attn Chelsey Davidson | | Onyx on the Bay Condominium Assoc.<br>665 NE 25th Street<br>Miami, FL<br>ZIP CODE 33137 |
| **B** | DOWN PAYMENT $ 105,759.00 | | | |

| | AMOUNT FINANCED (A Minus B) | PAYMENT SCHEDULE ||||
|---|---|---|---|---|---|
| | | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE ||
| **C** | $ 196,409.60 | 7 (Monthly) | $28,737.74 | FIRST INSTALLMENT DUE 06/29/2010 | INSTALLMENT DUE DATES 29th |

| | FINANCE CHARGE | SCHEDULE OF POLICIES |||||
|---|---|---|---|---|---|---|
| | | POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY/ ANNUAL INSTALLMENT | NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL OR POLICY ISSUING AGENT | TYPE OF COVER | MONTHS COVERED BY PREMIUM | PREMIUM $ |
| **D** | $ 4,066.83 | QFW509102 | 05/29/2010 | QBE Insurance Corporation<br><br>Florida Intracoastal Underwriters Ltd<br>1600 Sawgrass Corporate Pkwy<br>Suite 200<br>Sunrise, FL 33323<br>USA<br>Tax<br><br>TME = $3,400.00<br>Policy Detail Continued... | PROP<br><br><br><br><br><br><br>TAX | 12<br><br><br><br><br><br><br>Ref | 273,251.00<br><br><br><br><br><br><br>8,807.00 |
| **E** | DOCUMENTARY STAMP TAX $ 687.75 | | | | | | |
| **F** | TOTAL OF PAYMENTS (C + D + E) $ 201,164.18 | | | | | | |
| **G** | ANNUAL PERCENTAGE RATE 6.180 % | | | | | | |

TOTAL PREMIUMS must agree with Block "A" Above ---> TOTAL $   302,168.60

**SECURITY AGREEMENT**

**1. DEFINITIONS:** The above named insured ("the insured") is the debtor. AFCO Credit Corporation ("AFCO"), is the lender to whom the debt is owed. Singular words shall mean plural and vice versa as may be required in order to give the Agreement meaning. "Insurance company or company", "insurance policy or policy" and "premium" refer to those items listed under "Schedule of Policies".

**NOTICE:** 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACE. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS AGREEMENT. 3. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE SERVICE CHARGE.

THE INSURED AGREES TO THE PROVISIONS ABOVE AND ON THE LAST PAGE OF THIS AGREEMENT

Date 6-30-10

X _[signature]_ PRES.

SIGNATURE OF INSURED(S)
OR DULY AUTHORIZED AGENT OF INSURED(S)

**PRODUCER'S REPRESENTATIONS**

The undersigned warrants and agrees:
(1) the insured has received a copy of this Agreement, and the Required Federal Truth-in-Lending Disclosures for Personal Lines Insurance, if applicable, (2) the policies are in full force and effect and the information in the schedule of policies and the premiums are correct, (3) the insured has authorized this transaction and recognizes the security interest assigned herein, (4) to hold in trust for AFCO any payments made or credited to the insured through or to the undersigned, directly, indirectly, actually or constructively by any of the insurance companies and to pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured and that any lien the undersigned now has or hereafter may acquire on any return premium arising out of the above listed insurance policies is subordinated to AFCO's lien or security interest therein, (5) there are no exceptions to the policies financed other than those indicated and the policies comply with AFCO's eligibility requirements, (6) no Audit or Reporting Form Policies, policies subject to Retrospective Rating or to minimum earned premiums are included except as indicated and that the Deposit or Provisional Premiums are not less than anticipated premiums to be earned for the full term of the policies, if policy is subject to minimum earned premium, it is $ 3,400.00 , (7) the policies can be cancelled by the insured or the company on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (8) the undersigned represents that a proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the named insured or if the named insured is the subject of such a proceeding it is noted on the Premium Finance Agreement in the space in which the insured's name and address is placed.

**Indicate Policy & Prefix Number of Exceptions**

^: Days to CX > 10

Date _____   X _____

SIGNATURE OF AGENT OR BROKER

2M(5/98-win) c. 1998 AFCO Credit Corporation   QIV# 100000294299.002

Page 1 of 3



# Premium Finance Agreement
9155 S. Dadeland Boulevard, Suite 1402, Miami, FL 33156
TEL. NOS. 305-670-8703  800-288-5054

(CHECK APPROPRIATE BOX)
☐ PERSONAL
☒ COMMERCIAL

## SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY/ ANNUAL INSTALLMENT | NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL OR POLICY ISSUING AGENT | TYPE OF COVER | MONTHS COVERED BY PREMIUM | PREMIUM $ |
|---|---|---|---|---|---|
| WFW5091 | 05/30/2010 | James River Insurance Company<br>Swett & Crawford<br>3350 Riverwood Parkway Southeast<br>Suite 1100<br>Atlanta, GA 30339<br>USA | GL | 12^ | 11,034.00 |
| | | Fee | FEE | NRef | 261.28 |
| | | Tax | TAX | Ref | 664.54 |
| FBP2325241 | 05/30/2010 | Hartford Steamboiler Inspection & Insurance Co | B&M | 12 | 1,123.95 |
| | | Tax | TAX | Ref | 12.24 |
| ~~AUC2972964~~ 0715100080 | ~~05/30/2010~~ | ~~American Guarantee & Liability Insurance~~ Company<br>Kevin Davis Insurance Services Inc<br>P.O. Box 272168<br>Tampa, FL 33688<br>USA | ~~UMB~~ | ~~12~~ | ~~2,566.00~~ |
| | | Fee | FEE | NRef | 967.00 |
| | | Tax | TAX | Ref | 76.98 |
| 251160534 | 05/30/2010 | Continental Casualty Company<br>Ian H Graham Inc<br>P O Box 7022<br>North Hollywood, CA 91615<br>USA | CRIM | 12 | 918.00 |
| | | Tax | TAX | Ref | 9.18 |
| 251160534 | 05/30/2010 | Continental Casualty Company<br>Ian H Graham Inc<br>P O Box 7022<br>North Hollywood, CA 91615<br>USA | DO | 12 | 1,443.00 |
| | | Fee | FEE | NRef | 270.00 |
| | | Tax | TAX | Ref | 14.43 |
| | | Aon Policy Fee | FEE | NRef | 250.00 |
| | | Aon Policy Fee | FEE | NRef | 250.00 |
| | | Aon Policy Fee | FEE | NRef | 250.00 |

**TOTAL PREMIUMS must agree with Block "A" Above ---> TOTAL $**     302,168.60

2M(5/98-win) c. 1998 AFCO Credit Corporation    QIV# 100000294299.002

Page 2 of 3

**REMAINING PROVISIONS OF SECURITY AGREEMENT**       Page 3 of 3

**2. PROMISE OF REPAYMENT:** The insured requests AFCO to pay the premiums on the policies shown above. The insured promises to pay to AFCO at its office the amount stated in Block F above, according to the Payment Schedule shown above subject to the rest of the terms of this contract.

**3. SECURITY INTEREST:** The insured assigns to AFCO as security for the total amount payable in this Agreement any and all unearned premiums and dividends which may become payable under the insurance policies and loss payments which reduce the unearned premiums, subject to any mortgagee or loss payee interest. The insured gives to AFCO a security interest in all items mentioned in this paragraph.

**4. DEFAULT CHARGES:** If the insured is more than 5 days late in making an installment payment to AFCO, then the insured will pay to AFCO, in addition to the delinquent installment, a default charge of 5% of the unpaid balance of the delinquent installment or $10, whichever is greater. If the loan is primarily for personal, family or household purposes, the default charge shall not exceed $10.

**5. FINANCE CHARGE:** The finance charge shown in Box D begins to accrue as of the earliest policy effective date.

**6. THIS AGREEMENT BECOMES A CONTRACT:** This Agreement becomes a binding contract when AFCO mails a written acceptance to the insured.

**7. WARRANTY OF ACCURACY:** The insured warrants to AFCO that the insurance policies listed in the schedule have been issued to the insured and are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees.

**8. REPRESENTATION OF SOLVENCY:** The insured represents that the insured is not insolvent or presently the subject of any insolvency proceeding.

**9. CANCELLATION:** AFCO may cancel the insurance policies financed herein and the unpaid balance due to AFCO shall be immediately payable by the insured if, upon 10 days written notice to the insured, the insured does not pay any installment according to the terms of this Agreement. AFCO, at its option, may enforce payment of this debt without recourse to the security given to AFCO.

**10. POWER OF ATTORNEY:** The insured appoints AFCO its Attorney-in-Fact with full authority to cancel the insurance policies financed herein for nonpayment of premium.

**11. MONEY RECEIVED AFTER NOTICE OF CANCELLATION:** Any payments made to AFCO after AFCO's Notice of Cancellation of the insurance policies has been mailed may be credited to the insured's account without affecting the acceleration of this Agreement and without any liability or obligation on AFCO's part to request the reinstatement of the cancelled insurance polices. Any money AFCO receives from an insurance company shall be credited to the amount due AFCO with any surplus being paid over to the insured or the insured's agent for the benefit of the insured. No refund of less than $1.00 shall be made. If there is a balance due after AFCO receives the unearned premiums, dividends or loss payments from the insurance company then the insured will pay the balance to AFCO with interest at the rate shown in this contract.

**12. REFUNDS:** The insured will receive a refund of the finance charge if the account is prepaid in full prior to the last installment due date. The refund shall be computed according to the Rule of 78s subject to a $20 nonrefundable charge. If the refund is less than $1, no refund shall be made.

**13. INSURANCE AGENT OR BROKER:** AFCO makes no warrantees or representations concerning the financed insurance coverage nor has it played any part in the selection, structuring or acquisition of such coverage. This Agreement represents the entire understanding of the parties. AFCO has not authorized any party whatsoever to make any representations, commitments or promises or to play any role with respect to this premium finance transaction other than completing this contract on behalf of the insured.

**14. SPECIAL INSURANCE POLICIES:** If the insurance policy issued to the insured is auditable or is a reporting form policy or subject to retrospective rating, then the insured promises to pay the insurance company the earned premium computed in accordance with the policy provisions which is in excess of the amount of premium advanced by AFCO which the insurance company retains.

**15. CANCELLATION CHARGES:** If AFCO cancels the insurance policies, then the insured will pay AFCO a cancellation charge equal to the difference between $10 and the default charge.

**16. ATTORNEY FEES:** If, for collection, this Agreement is placed in the hands of an attorney who is not a salaried employee of AFCO, then the insured agrees to pay the attorney fees but no more than 20% of the amount due and payable under this Agreement.

**17. SUCCESSORS AND ASSIGNS:** All legal rights given to AFCO shall benefit AFCO's successors and assigns. The insured agrees not to assign the policy without AFCO's written consent except for the interest of mortgagees and loss payees.

**18. MISSING INFORMATION:** If the policy has not been issued at the time of signing this Agreement, then the insured agrees the name of the insurance company, and the policy numbers of the insurance policies may be left blank and may be subsequently inserted in this Agreement. AFCO will notify the insured of this information on its written Notice of Acceptance.

**19. ADDITIONAL PREMIUMS:** The money paid by AFCO is only for the premium as determined at the time the insurance policy is issued. AFCO's payment shall not be applied by the insurance company to pay for any additional premiums owed by the insured as a result of any type of misclassification of the risk. The insured agrees to pay the company any additional premiums which become due for any reason. AFCO may assign to the company any rights it has against the insured for premiums due the company in excess of the premiums returned to AFCO.

**20. AGENT'S WARRANTIES:** To convince AFCO to enter this Agreement and accept the security underlying this Agreement, the person executing this Agreement, if not the insured, warrants severally and as the duly authorized agent of the insured: that he is the duly authorized agent of the insured appointed specifically to enter into this transaction on the insured's behalf; that he can perform any act the insured could or should perform with respect to this transaction; that he will hold in trust for AFCO any payments made or credited to the insured through the undersigned or to the undersigned, directly, indirectly, actually or constructively, by any of the insurance companies and that he will pay the monies to AFCO upon demand to satisfy the then outstanding indebtedness of the insured.

**21. LAW GOVERNING THIS AGREEMENT:** The insured agrees that this Agreement shall be governed by the laws of the State of Florida.

**22. DISHONORED CHECK:** If an insured's check is returned because of insufficient funds to pay it, AFCO may impose a charge of $10.

**23. ENDORSEMENTS:** The insured agrees that AFCO may endorse his or her name on any check or draft for all monies that may become due from the insuring company and apply the same as payment of this Agreement returning any excess to his or her agent, provided that if such excess is in an amount less than $1 no refund shall be made.

2M - Last(5/98-win)

**INSURED'S INITIALS**